Okay, this is a time set for argument in case 25-2830, Codoni v. Port of Seattle. I know we have several appellants who are sharing time, and so you may each reserve time for rebuttal. Mr. Dvoretsky, good morning. Good morning. May it please the Court, Shai Dvoretsky for Alaska Air Group. I'd like to reserve two minutes for rebuttal. With me is Amir Tehrani for Delta. The Port is joining our arguments. David Peters is also here for the United States. I'm happy to answer questions. The Court may have about any preemption issue, but I plan to focus today on the Clean Air Act and on impossibility preemption. Mr. Tehrani will focus on the ADA and the other implied preemption arguments, and Mr. Peters will address the federal interest at stake. Turning to the Clean Air Act, Section 233 preempts any state law standard respecting emissions of any air pollutant from any aircraft or engine unless that standard is identical to the federal standard. Plaintiffs' claims meet every element of the statutory preemption test. The claims seek to assert a standard because under the Supreme Court's decisions in Ginsburg and CSX, rules that are supposedly required by state common law count as standards for purposes of express preemption provisions. That standard here respects emissions of air pollutants because plaintiffs claim that the airlines violated Washington law when their planes emitted pollution while flying into and out of SeaTac that then built up to harmful levels on their property. I read the plaintiff's complaint a couple of times, maybe not every word every time I read it, but it's a pretty long complaint. It tells a story. Do you read the complaint as challenging emissions from the exhaust, from the airplanes, or just thereafter cleanup? What's on the ground? I don't think what does it does encompass both or is it focused on one or the other? I think the way the way you read it now, remember, we're supposed to read it in the light most favorable for the plaintiff. I think the only way to read it is that the cleanup is the consequence of what they believe to be unlawful emissions. The cleanup is the remedy that state law provides for contamination that they claim comes from the emissions that result from our flying federally regulated planes and engines on federally regulated flight paths over their homes. The reason that is preempted under the Clean Air Act is that is a standard that respects emissions. The emissions, again, are the basis for the contamination that they say needs to be cleaned up. It is a standard that respects emissions just under the plain language of the statute of any air pollutant from an aircraft or engine. So any pollutant that might come from the exhaust of an engine that ends up on the ground for whatever reason, the fact that it's on the ground still means it's covered by the Clean Air Act. Because, yes, because it is an emission, if it is an emission from the engine or the airplane, again, looking at the text of the statute there. So the remedial, the Washington, of course, trying to invoke this remedial measure to abate the pollution. But you're saying it doesn't matter because the preemption really arises with the emission. First, yes, first, as a matter of statutory text, the preemption arises from the emission. And second, it's not possible to separate out the remedy from the unlawful conduct that justifies the remedy as a matter of ordinary state tort law. The only reason that the airlines could be ordered or the court could be ordered to pay cleanup costs or to establish a medical monitoring fund that they ask for is if it's determined that they violated the law by causing the pollution in the first place. And so to Judge Paez's question, you can't separate out the two. The only reason that you potentially have the cleanup cost, the medical monitoring fund, whatever, is because of an unlawful emission. And the state standards regarding emissions from aircraft or engines are preempted under the Clean Air Act, unless, again, they're identical to a federal standard. How about one of the things that they also talk about are, I don't know if I've got this correct, but they talk about releases of metal from the fuselage of the airplanes.  Right, flaky. How does that fit in with the Clean Air Act? So that's also covered by the plain language of the Clean Air Act. Again, if we just go back to the statute. First, the statute is distinguishing between emissions from an aircraft or an engine. So it's not just the gases from the engine or whatever from the engine that is covered. It's also an emission from the aircraft itself, implying that pollutants can be emitted from the plane. In addition, when we look at the definition of air pollutant in the statute, this is 42 USC 7602G, it's quite broad. It's any air pollutant agent or matter which is emitted into or otherwise enters into the ambient air. So under the plain text of the statute, the particulate matter that they are alleging is also also debris is not any. What about any kind of debris from the plane, from the fuselage of the plane? I mean, is that different than exhaust? I think that we're looking at what an agent or matter. Again, it's very broad language. If you had a situation where an entire wing fell off of a plane or something, you wouldn't ordinarily think of that as a pollutant. You didn't pollute the ground with the wing. That probably wouldn't be covered by the Clean Air Act. Presumably not. But that's not what they're talking about here. They're talking about luggage somehow flew out, flew out, landed on the ground. They're talking here about very fine particulate matter and whether that comes from the engine or whether that comes from the aircraft itself. It's covered under the plain language of the Clean Air Act. And that's the way you understand the allegations in the complaint. Correct. They list a host of. Contaminants, I think, in the complaint. Sure, they're all they're all different kinds of air pollutants under that broad definition. If the court has no other questions on the Clean Air Act and watching my clock, I would briefly turn to impossibility preemption, which I also think is a straightforward way to resolve this case. State law is preempted when it's impossible for a private party to comply with both state and federal requirements absent special accommodations from the federal government. Here, there are three things that the airlines could do and that the port could do in order to avoid state law liability. One, modify their aircraft to reduce emissions. Can't do that without permission from the federal government to alter their flight paths and they're not flying over plaintiff's homes. Can't do that without permission from the federal government. Three, stop service to see it in the brief. But if you read their complaint, I mean, remember, this is up here until B6. So we look at the allegations in the complaint. Right. Right. And, you know, that might be a remedy. We don't know. We don't we don't know that until we get to the end of the case. Right. Well, I think, you know, that's not too helpful. I think we do know that from the complaint, because the only thing that they are asking for in the complaint, they are saying, go ahead, fly your federally regulated routes. Keep the routes, keep the planes, as is. But pay us damages. And that goes back to our earlier colloquy. That's a different point. No, no. But I think it comes back to the same point. The only way to understand their complaint is that they are seeking money for a violation of state law. If you are violating state law, you are not, by definition, simultaneously complying with both state and federal law. And the Supreme Court has made clear in cases like PLEVA and cases like Bartlett that a first, a defendant doesn't have to cease operating in a market entirely in order to avoid preemption. And second, that if a possibility preemption would be a dead letter if the answer to any preemption question were just pay damages. Because again, at that point, you're not complying with both state and federal law. You are violating state law and paying for it. Let me ask you, do you understand the complaint to be alleging negligence in the initial pollution, like the exhaust, or just regarding the cleanup, the negligence in the way that they have? I think the only way to understand it is in the initial exhaust. Let me give you an analogy as an example. If I punch my neighbor and I refuse to then pay the medical expenses, you wouldn't say that the thing that I did wrong is not paying the medical expenses. The only reason that I am obligated to pay the medical expenses is because I committed a battery in the first place. That's what triggered the need for the medical expenses. As a matter of tort law, that is the only way to understand what the alleged unlawful conduct is here. And if the unlawful conduct that they allege here is emissions from the plane and tied to the emissions and the flight paths, that's preempted for all of the different reasons that are explained in the brief, some of which I've talked about today. I'm happy to answer any questions the court may have. I do want to be mindful of my rebuttal time as well. We'll put two minutes on the clock for you. Thank you, Mr. Brzezinski. Mr. Tehrani, good morning. Good morning, your honors, and may it please the court, Amir Tehrani for Delta Airlines. In addition to being barred by the Clean Air Act's preemption provision and by conflict preemption, the plaintiff's complaint is also barred by the broad language of the ADA's express preemption provision, by the FAA's exclusive control over airspace management, and by the EPA and FAA's exclusive control over aviation emissions. The Supreme Court has described the ADA's express preemption provision as deliberately expansive and as conspicuous for its breadth. It bars any state law claim that relates to a price, route, or service of an air carrier. That's precisely what these allegations- How do the claims relate to service? They relate to service, your honor, because they are a direct attack on the airline's decisions to fly into and out of SeaTac and the frequency of those flights. One of the ways, you know, I keep saying this, but for me, I mean, you have to read the complaint. I mean, that's what this is. That's where we're at. The district court denied the motion to dismiss on 12B6 grounds, right? So what's critical here is what's alleged in the complaint, right? That's exactly right, your honor. And the complaint mentions the defendant's flights and their routes in and out of SeaTac more than 15 times. It alleges that the contamination at issue is, quote, the direct result of the flights into and out of SeaTac, that it's caused by those flights, that it is created by those flights, and that is closely associated with the defendant's flight paths. So this is a direct challenge to the routes that the airlines are flying into and out of SeaTac. And so one of the ways you could read this complaint is what they're really complaining about is the failure to clean up. It's impossible to divorce the alleged failure to clean up from the flights and the flight paths that, in the words of the complaint, directly result in the emissions that the airline failed to clean up. We wouldn't be standing here today, your honor, if the plaintiffs didn't allege that they lived under the flight paths. And we wouldn't be here today if the defendants weren't required to fly along the federally specified flight paths. Not all, as I understand it, it was a five-mile radius around the airport is what they're identified as the area of concern. Correct, your honor. And the plaintiffs allege that they live within that five-mile radius, that they live under flight paths that have been specified by the FAA. This theory of liability challenges the defendant's ordinary flight operations. There's nothing unique about SeaTac. There's nothing unique about the fact that these airplanes have to fly below 3,000 feet when they land and when they take off. If this theory of liability is permitted to go forward, then the defendants would face similar claims at every commercial airport throughout the country. They would face staggering liability. They would be making decisions about the markets to serve based not on consumer demand, but based on the risk of state law liability. That is anathema to the deregulatory objectives of the Airline Deregulation Act. It also would create massive disuniformity in an area that requires uniformity. Air travel is inherently interstate. It's inherently international. There needs to be a uniform set of federal regulations governing airplane emissions. It can't be the case, to use the words of this court's decision in Montalvo, that an airplane that takes off from Providence, Rhode Island, that lands in Baltimore, Maryland, and that continues on to Miami, Florida, is subject to three different sets of state standards along the way. And it can't be the case that a Delta Airlines flight taking off from Atlanta, Georgia, is subject to one set of emissions standards when it takes off, a different set of emissions standards when it lands, and different sets along the path from Georgia to Washington based on the state that the airplane happens to be passing over at that point in the flight. So for all of these reasons, these claims are squarely barred by the ADA's express preemption provision. They relate to airlines, routes, and services. They're also barred by the FAA's exclusive control over airspace management. Congress has given the United States government exclusive sovereignty over United States airspace. Let me ask you this. What caught my eye when I read the complaint was they had all these studies, like from the University of Washington and a couple other places, about the effects of this black dust or black soot or whatever, the contaminants that are in the air and whatnot. Is there any party or any entity that might be responsible for, you know, cleaning up? Your Honor, we're talking about the inherent byproducts of ordinary flight operations. The FAA, when it sets flight paths, the EPA, when it sets emission standards, takes these considerations into account. For example, the Move Up study that Your Honor referenced and that is mentioned in the addendum that sets particulate matter limitations for airplane engines. That's at addendum 43. The FAA, when it sets flight paths, strikes a careful and delicate balance between considerations of safety and efficiency on the one side and the protection of persons and property on the ground on the other. The U.S. Supreme Court recognized that in the city of Burbank versus Lockheed and explained that in light of this delicate balance that the FAA needs to strike, that there needs to be a, quote, uniform and exclusive system of federal regulation. Well, maybe this is a variation on Judge Paez's question. But in your view, is there any way in which these plaintiffs that live in this contamination zone could allege any kind of damages or claim for the impact on their habitat? Not from these ordinary flight operations. There's no allegation in this complaint that the defendants have deviated from the federally prescribed flight paths and from the federally prescribed altitudes. Could they bring a claim for violation of federal emission standards or bring a claim for deviation from a flight path, for example, if the claim was premised on federal law? The plaintiffs could bring a parallel claim that seeks to enforce a violation of a federal standard under state law. But this court's decision in Nacarino versus Cachey makes clear that where a plaintiff seeks to rely on enforcing a federal standard through a parallel state law standard, it needs to allege a violation of federal law in the complaint. And when it fails to do so, 12B6 dismissal is appropriate. That's how there is potential for a claim for violation of the federal emissions law. Correct. There is a potential, but that's not the claim. And that that's not the claim that these plaintiffs brought, Your Honor. And that's precisely why in Nacarino, this court recognized the possibility of a parallel claim to enforce the requirements of the Federal Food, Drug and Cosmetics Act, but still dismissed the case because the plaintiffs did not allege a violation of federal law. And that's precisely the case here. The plaintiffs don't allege a violation of federal emission standards. They don't allege a violation of the flight paths that are specified by the FAA. So this complaint is subject to dismissal not only based on the ADA, but because it is an impermissible intrusion on the expert regulatory determinations that the FAA made in specifying flight paths and that the EPA made in establishing the emissions levels for these ordinary flight operations. And again, I would return to the fact that there's nothing unique about Sea-Tac. There's nothing unique about the defendants' flights into this airport. And if this claim is permitted to move forward, it would lead to a risk of massive liability for these defendants. It would lead to defendants making decisions about the markets to serve based on the risk of state law liability, not based on the free market principles enshrined in the ADA. And it would lead to a patchwork of dis-uniform state law standards that is incompatible with the uniformity that this court recognized is necessary in the Gian Turco case, the U.S. Supreme Court recognized is necessary in City of Burbank. Okay, we'll put two minutes on the clock for rebuttal. We'll hear next from Mr. Peters, who's appearing for the United States. Mr. Peters, as you're an amicus, I don't think we'll have rebuttal time for you. So this is your, this is your time. No problem, Your Honor. Good morning, and may it please the court, David Peters, on behalf of the United States of America. Congress has long recognized that aviation management and safety are spheres where the federal interest is dominant, and the need for a uniform and exclusive system of federal regulation is paramount. That's why Congress included in the Clean Air Act and Airline Deregulation Act broad provisions expressly preempting state standards, and is why this court has recognized that even absent such an express preemption provision, preemptive intent is more readily inferred in the context of aviation, given the federal government's extensive regulation in the area pursuant to the Federal Aviation Act. Does the United States have a view? There's so many different preemption arguments that have been made here. Does the United States have a view on which of these is the strongest? I'm not sure. I think we agree that there are various different ways in which these claims are preempted. I don't think we have a strong view on which of those is the easiest way to go about doing it or, you know, the federal government enforces all of these federal standards, and we think that they are all implicated and preempt the state law claims that are at issue here. So you don't have any view on which we use express preemption, applied preemption, assuming we were to go, assuming we were to disagree with the district court? You know, I mean, I think the district court erred in several key respects in holding that these claims weren't expressly preempted. So I think it's worthwhile to, I think, clarify to this court to clarify why those claims are. I mean, I think in the ADA context, for example, the district court relied on this kind of language about having to bind claims, which would suggest that common law claims could never be preempted by the ADA. This court has explained why that's not right, but I think it's worth reiterating why that's not the case here. But again, we don't have a strong position on, you know, if this court is inclined to rule that these claims are preempted, which of the various theories are. You may not have thought about this because this doesn't, you know, the question I have really relates to the court, but, you know, they have an inverse condemnation claim under Washington, under the Washington state constitution. I'm aware, Your Honor, we didn't take a position on. Yeah, do you have any views on that? No, Your Honor, we participated on a limited basis, which is what we think these claims are preempted by the federal standards. We don't have. Including the condemnation claim? No, no, our participation is not on the condemnation claim. Do you have a view on whether that claim is preempted? I'm not in, not in a position to take a view right now in front of this court about what that, what that claim is. Let me ask you this. I'm sure you carefully read the complaint. I did, Your Honor. Okay. How do you read it? Do you think they're just challenging the cleanup aspects or are they challenging the admissions? I share the views that are expressed by my colleagues previously at the podium. I think that there cannot be a standalone remediation claim because the action that's being challenged here is the unlawful conduct, but those, that conduct of the airlines and the port are governed by federal standards. And so therefore their claims are preempted. Is it possible that there are emissions that are not air pollutants under the federal law that would permit them to file a state claim? Your Honor, I mean, I, I'm not sure. So there are, the scope of the CAA, the Clean Air Act preemption provision is broad. Whether there is some kind of pollutant that might exist that doesn't, or some kind of item that might not be an air pollutant, it may not fall within the scope of the Clean Air Act, but it may nonetheless be preempted by any number of other provisions, right? I mean, the Federal Aviation Act has extremely broad, or sorry, very extensive provisions about the way in which fuselages or airplanes in general are to be designed. And that I think occupies the field of kind of airworthiness of various aspects of the plane. And so even if a claim may not fall within the scope of the Clean Air Act, it may nonetheless be preempted by some other provision like the Federal Aviation Act. There are no other questions? Thank you. Okay, thank you. Mr. Berman, good morning. Good morning, Your Honor. Steve Berman and Nathan Emens on behalf of the plaintiffs in this case. Let me start by saying that I think procedure matters here. It matters greatly because we haven't heard the defendants mention the procedural posture that this motion was decided on. And that is, as the District Court noted, preemption is an affirmative defense. And you don't grant a motion to dismiss on an affirmative defense unless the complaint actually pleads all the elements of that preemption. That's true. I mean, I think the issue with the case obviously is that it starts to bear on some areas of law that have a lot of federal law, aviation and air quality. And so I think that's why I think the District Court granted the 1292B request to put it up here so that we could take a look at it before further discovery or investment in the case. And so I guess the question I would have is, you know, particularly under the Clean Air Act provision, the Section 233 argument, how do you respond to just the plain text there? I respond to the plain text the way the District Court did. Two ways, actually. First, the District Court said under this court's decision in Navy, you make these determinations on a case-by-case basis. And right now, on this record, it's their burden to show that they are in compliance with all federal regulations, not our burden. Have you alleged they're violating any federal regulations? We're not. And they come in and say, we're in full compliance. They imply, as the District Court found, they're implying they're in compliance, but no one knows that. What they could have done is brought a factual attack and come in and said, we're actually in full compliance. The omissions that we're putting out are exactly what the regulators said we can do. And therefore, but they didn't do that. They didn't do that. The question is whether that was their burden when the allegation here was that it violated state tort law. I mean, I think you're right that the District Court relied on the Navy case. So maybe we should go back to that because I think it's an important part of the, at least, the District Court's analysis. So the arguments may, well, that case is a little different because it involves more like a stationary structure. So do you think that matters? I don't think it matters because what matters at this stage of the case is we allege that there was an unlawful intrusion, right, on our property. They come back and say, well, this is all permitted. But we don't know that. Let's take, for example, your questions, Judge Paez, about the different kinds of material that we claim are coming onto our client's property. They say that it's air pollution. Well, we make a distinction in the complaint, and that's at ER 56 and 57, between air pollution and heavy metals. And we also make a distinction in the complaint at paragraphs 54 and 55 of gases coming out of the back, which I would agree are emissions, and flaking of heavy metals off the fuselage. But isn't that all subject to the Clean Air Act? I don't believe that the flaking is. And on this record, they haven't established that it is. They didn't put in any declarations or any evidence on a factual attack to say this flaking is permitted. It's rigged. What if the flaking is this big? There's no allegation that it's that big, right? I mean, I thought we're talking about fine particulate matter that lands and, you know, maybe creates a dusting almost. Well, we're talking about toxic heavy metals that are coming down on our client's property from flaking, and they have not established that flaking is covered by the CAA or any regulation. The argument is that if it's an air pollutant, it's an emission from an aircraft or an engine thereof. Well, and then the question is, do they need to go further than that when you have the Massachusetts EPA case that talks about any kind of compounds, air pellets, that are of whatever stripe? So why do they need to do anything more than to cite the statute and the breadth of the  Because if they're not in compliance with the statute and they're depositing materials that aren't allowed or in amounts that aren't approved, then they don't have a preemption defense, right? We've alleged intrusion. They're coming back as an affirmative defense saying this is all allowed, but they haven't made a showing that it's allowed. That's what the district court was troubled by. I think it's maybe allowed isn't the right word, but maybe preempted is the word. That's what the district court was troubled by. We don't know. He said, we don't know if this is authorized. We don't know if it's permitted. Let's take some discovery and find out. Now, you said, you know, maybe we should get to this earlier rather than later. But I think on a procedural matter that we're in the right position. We've alleged what we have to allege a state of state law claim. They want to assert this affirmative defense. They can't do it facially because they're just hypothetically saying we're in compliance as the judge found. And as this court has said, hypothetical conflicts aren't enough to create preemption. Alleged a violation of the federal law. We have not. I didn't think so. We very carefully did not because we don't have enough evidence. What they're doing is in their records, right? We don't know what they're doing. So we couldn't allege a violation. Know what landed on your client's land. But we don't know if the way it's coming out of the airplane, for example, exceeds what's allowed by the regulators. We just don't know that. That's what discovery is for. That's what Judge Whitehead thinks. But the nature of what of the claim is not that we have a theoretical federal law claim. We want to investigate if it's true. The theory is we have state law liability that can exist on top of the federal law. And so we hear arguments from the other side saying, well, gosh, if that's true, we're going to have basically, you know, litigation about every airport in the Ninth Circuit. And we'll be exposing passengers and companies and everyone involved in this to different legal standards. How do you address that? Well, we address it that, again, that's hypothetical. And we allege that the Sea-Tac airport is unusual. That's in the complaint that you obviously have read a couple times. It's unusual in that it only goes one way. So most airports, you can come in from north, south, east, and west. But because of the unique one-way aspect of Sea-Tac, which we allege, and because it's in a valley, there's a unique circumstance of accumulation of pollution. But aren't the routes into that essentially federally prescribed? I mean, somebody can't fly into it a different way under federal law. That's right. But I'm responding now to the argument this is going to happen everywhere. Now, they said that two years ago when we were arguing the motion to dismiss. We won the motion to dismiss. No one's filed a case. And one of the reasons, I think, is because Sea-Tac is very unusual. So you're not going to see this patchwork threatening the airline industry all over the place. And on that issue, I think why procedure matters is we don't know. This goes to both ADA preemption and Clean Air Act preemption. We don't know exactly how the airlines would respond. They say that we're trying to change flight paths, or they will have to change flight paths. We're saying, no, keep flying. We're happy. But does it matter? If it's keep flying but pay money in order to fly the routes that you're federally prescribed, doesn't that raise the same preemption issue? I don't think it does, because there's nothing in any of the preemption arguments they cite to that suggest that, again, we have a presumption against preemption, that Congress wanted to take away the tort remedies that we are asserting on behalf of our clients, that Congress expressly or impliedly intended that people who are poisoned by these flights are remedies. Let me, let me, go ahead. Stop right there, people who are poisoned. If they are poisoned from an emission of an air pollutant from the aircraft or the aircraft engine, that is lamentable. But why isn't that preempted? Because you look to see whether what we're doing under the ADA is trying to change, the words are, whether the state law is a law related to a price route or service. I think we're back to the Clean Air Act. We're jumping around here, but we're back. I think we're back to the Clean Air Act. I have so many interceptor missiles fired at me that it's hard to keep them all straight. I think the question is. Under the Clean Air Act, if there's some terrible poisonous emission that is coming from the aircraft, why isn't that an air pollutant from the aircraft or aircraft engine and then therefore preempted under the CAA? Because under California versus Navy, what the court there said is, A, you have to look at whether there's a way to get some relief that doesn't change the operation of the aircraft. Okay, that's directly out of. Right, but it seems to me that the Navy cases, you got an aircraft engine or you got some testing sitting on in a hangar on the ground somewhere and that's very different than any other cases. Well, let's take the Montalvo case. Okay, in the Montalvo case, what the court there said is, well, the airlines have not yet produced any evidence that reconfiguration of the seating would have a material impact on federal deregulation. And we're in the same stage here. The airlines have not put forward any evidence, any declarations, and we don't know that if we went and pursued this lawsuit, that there would be a material impact on services, on pricing, or on routing. There could be no impact on routing because they're just going to keep flying. The fact that there might be an impact on pricing, this court has said is not enough. So, you know, and now we talk about incoming missiles, you're jumping provisions there as well. You know, we were talking about the Clean Air Act as the foundational preemption, at least initially. And then, of course, we have the ADA as well. But in the Navy— What—tell me this. What is the discovery that you would set out to get to the issue that, in your view, would preempt preemption? A good question. Number one, we would want discovery from the airlines and the port on the flaking issue. Is the flaking regulated? Is it authorized? You know, what do you know about it? With respect to the emissions, we would want to know, you know, what are the emissions and how do they compare with what you were allowed? And then we would want our experts to postulate or explain to the district court, which is what's contemplated by the Navy case, is there a way to come to a resolution that doesn't cause a change in the aircraft engine? So let's say that they've exceeded emissions standards, whether under the EPA or some FAA authorized manufacturing authority, wouldn't that then be a federal suit on violation of those regulations and not a state court claim? Well, I think we could—I would still maintain my state court claims and use the violation of the emissions regulations as a predicate, additional predicate, for those claims. Could I just trigger off Judge McEwen's question there about the state law claims? So what is the theory, the negligence theory, let's say, with respect to Alaska? Why was— I don't have a negligence theory. You don't have a negligence theory? I think our claims are trespass, nuisance. You don't—you didn't allege a negligence? Off the top of my head, I'm not recalling that. But the gravamen of our case is an unwanted intrusion on our property. That's a classic trespass, nuisance, and inverse condemnation claim. You're taking my property. If there's a negligence claim, I'm sorry, I don't recall it. And so what I claim, what we claim, the airlines have done unlawfully is to enter our property, right, and damage our property. That's a trespass. It's a trespass. And what's the nuisance? Same thing. It's a nuisance. To enter the property. To enter the property in an unwanted fashion. I tried a nuisance trespass case against the court of Seattle. Let me ask you, is your—  But is the whole focus of the case just clean up? Yes. That's why I don't think the preemption is an issue. We don't care. Just clean up. Clean up after yourself. Keep flying. Don't change prices. Don't change routes. Just, if you're going to dump your material on us, your poison on us, clean it up. But doesn't the statute direct us to the source of this? I mean, the Clean Air Act in particular is asking, refers to emission of any air pollutant from any aircraft or engine. So it may be that you would like clean up, but is it not still the case that we're talking about emissions from an aircraft or an engine? Well, we are in part. Again, I don't believe that they've established that the flaking is an emission rather than— But the flaking, I mean, I think it's, flaking is a kind of generic term. And when you hear it, you might think of something that's a bigger flake. But the allegations and the complaints are really about fine particulate matter. That's what's pled. But if you read the, well, it's actually pled differently with respect to the materials coming out of the back of the plane. We recognize those are emissions as the word is used in Section 233. As for the particulate matter that's flaking, that's not an emission. And I don't think they've established that that's considered emission. So, you know, I hate to sort of dwell on matters that may be unimportant. But, you know, as I look at the complaint, which I have right in front of me, resident class claims, count one, negligence alleged by plaintiffs against all defendants on behalf of the resident class. OK, I stand corrected, right? And they have another one against the other. And so I would say the negligent act is depositing poison on my client's property without— With the emissions. Without cleaning it up. Yes. Whatever comes out of the plane. Yes. How could that be? How could that be negligence? Because you're not cleaning it up. You know that you're hurting me. You know from these studies that you're poisoning me. Wait a minute. So negligence, you know, a basic negligence claim rests on duty. So what's the basis of the duty here? I think they have, if they're operating over someone's property, they have a duty of care. And they breach that duty of care by poisoning these people. And not cleaning it up. And on the CAA preemption argument, I would point out to your honor, on the Silkwood case, where the court in the Silkwood case that says even where the federal government comprehensively regulates an industry, Congress assumed that state law remedies in whatever form they might take were available to those injured. And I think that it would be an extraordinary broad reading of the CAA to say it gives them immunity from doing what they did. I mean, you've obviously read all, this is not a good situation. This is an underprivileged community that's been poisoned. And the notion that they can't do anything about it, I think is pretty extraordinary. It's an extraordinary immunity. And again, all the district court judge did on these issues was to say, we don't really know what's going on here. So I'm going to take a pragmatic approach. And on a facial attack, you didn't properly make it because we did not plead into the affirmative defense. We avoided it. So let's go back and find out what's going on there. And so I know I have more time. Could you explain to me the theory of your inverse condemnation claim? Yes, that under Washington law, that there's really an overlap between nuisance and trespass and condemnation. And you've come and taken or diminished the value of my property. And that's a taking, which the district court upheld that claim. And I actually tried a taking case on the same theory against the Port of Seattle in this very courtroom about 12 years ago. And our theory was condemnation and nuisance and trespass. Those are kind of the basic claims you see in any airport noise or lawsuit relating to the airports. So unless you have any further questions, your honors, I think I've covered what I want to cover.  Thank you, Mr. Brennan. So we'll hear first from Mr. Deborah Redsky. Thank you. Let me start with Judge Piazza's question about how you read the complaint. It's not about how you read the complaint. It's about how you understand the complaint as a matter of law. And I thought the colloquy with Mr. Berman was very instructive on that. The duty of care doesn't come from the failure to clean up. The duty of care would be under Washington law not to pollute in the first place. But the alleged pollution is a result of, again, flying federally regulated aircraft and engines on federally regulated flight paths. Second, with respect to the question that you asked, Judge Piazza, is anyone responsible? We detail in our brief at pages 17 to 20 all of the ways in which the EPA and the FAA, the agencies themselves, take into account the effects of emissions on surrounding neighborhoods, including at SeaTac in particular. And as to the preemption question, the Supreme Court held in the city of Burbank that an ordinance about late night takeoffs was preempted, even though Congress hadn't set up any sort of a scheme where the neighborhoods who are affected by the late night takeoffs could recover. So that doesn't affect the preemption analysis. With respect to discovery, the court asked Mr. Berman, what would you like to get in discovery? I wrote down three things that he listed. One, is flaking regulated? That's not a fact question. That's a question of law, and it's plainly covered by the Clean Air Act. Second, what are the emissions and were they allowed? Pause there on the flaking. So there are arguments being made maybe that flaking is not covered by the Clean Air Act. So elaborate on this point for us. The Clean Air Act, again, covers any air pollutant from any aircraft or engine. So I'd focus on two things about that language. One, the Clean Air Act covers things not just from the engine, but from the aircraft. Thinking of flaking as something that comes from the aircraft is the ordinary understanding of that language. Second, the Clean Air Act defines air pollutant. Again, it's 42 U.S.C. 7602G. It's quite a broad definition. It's any air pollutant agent or matter, which is emitted into or otherwise enters into the ambient air. As the court's question suggested, when you read their complaint, they're talking about very fine matter, very fine soot that comes from the aircraft. That is under the plain language of the statute, an emission from the aircraft. An airplane wing would not be covered by this. I don't think as a matter of ordinary reading of that statute that that would be considered. Somewhere between tiny flakes and big airplane parts. Wherever that line is, if you think there is one. Again, the language of their complaint is talking about very fine soot and very fine particulate matter that comfortably fits within this statutory definition, which to the court's questions to Mr. Peters, I think that's the easiest way to resolve this case. Although I think impossibility preemption is a close second in my view. So how do you respond to Mr. Berman's argument that, you know, when they pledged, when they alleged, drafted the complaint and made their allegations, they were sensitive to, I gathered from what I took from it, is that they were sensitive to these preemption issues. And they were careful not to only allege state law claims and to craft the complaint in a way that they thought would survive. And the district court seemed to believe, you know, go along with that. The district court agreed that preemption is a defense. The allegations in the complaint don't really get to the factual predicates for preemption. And it's really your burden to come forward. And you didn't come forward with any evidence. So we just look at the allegations in the complaint. That's all we have. How do you respond to his concern? That's just not how preemption law works. I'm glad that they were sensitive to the preemption problem. I don't think they've overcome it. Is preemption a defense? I'm sorry? Is it a defense? It is a defense. OK. But if you look at how the Supreme Court has analyzed preemption in cases like PLEVA and Bartlett, the pharmaceutical cases, the question is not, is there some hypothetical way that maybe you could come up with that you could comply with both state and federal law? The question is, you take federal law as you find it. What does federal law require? And is the state law cause of action is complying with the state law duties as the plaintiffs see them? Is that putting you in conflict with federal law? And here again, their complaint, if you read it, is dependent on emissions. That's the basis for the duty to clean up in the first place. That makes it a state law standard respecting emissions. And it also puts them in conflict with the extensive federal regulations about routes, about airplane flight paths, aircraft design, emissions from the engines, and so forth. And none of this would be unique to Sea-Tac. If you look at any other airport in the country, if you look at the district court said, you know, that's that's just all remedy. You know, that maybe if that's what they're asking for, then maybe this is all preempted. But it's too soon to make that decision. How do you respond to what the district court did? Candidly, I don't understand that logic because I don't understand, as I think your own question suggested to Mr. Berman, I don't understand how you can separate out the remedy from there being an underlying state law duty. The state law duty. This goes back to my example with my neighbor. My neighbor is not upset with me because I haven't paid his medical expenses. My neighbor would be upset with me if I punched him. Here, the state law duty that they're alleging has to be not to pollute. It doesn't matter what words they put on the page of their complaint, whether they phrased it differently on the page of the complaint. Paper doesn't refuse ink. You can write it in the complaint to say, oh, we're really challenging the cleanup costs. But the only way to understand that as a matter of law is that what you are challenging is the unlawful conduct that precipitated the cleanup costs in the first place. And if Washington law makes it unlawful to emit at certain levels when approaching the airport, that directly conflicts with federal law. And nothing about that is unique to Sea-Tac. If you look at any other airport in the country, sure, there are flight paths that are set in advance, but that's also going to be dependent on what air traffic control says with respect to weather and the other flights in the area, et cetera. And so it's not like when you approach Sea-Tac, the pilots can only go one way, right? There's going to be some variation on that based on the conditions. There's nothing unique about Sea-Tac in that respect that would prevent this sort of lawsuit from proliferating everywhere in the country. As to why it hasn't come up in the last couple of years, well, the complaint was brought. I do think it has obvious preemption problems that they were sensitive to. And this court granted review. And so I think if this court were to affirm, that is what would lead to the sorts of problems that we're forecasting. Okay. Thank you. Thank you. We'll hear from Mr. Tehrani has the last word here. Thank you, Your Honor. On the inverse condemnation claim against the port, all of the arguments that Delta and Alaska have made this morning apply with equal force to the inverse condemnation claim. Plaintiffs have never argued to the contrary. On the timing of this court's resolution of the issues in this case, this court and the Supreme Court regularly dismiss cases on preemption grounds based on 12B6. In the ADA context, the U.S. Supreme Court did that in Wallens. It did that in Ginsburg. This court did it in In-Ray Korean Airlines. In the implied preemption context, this court dismissed aviation-related claims on implied preemption grounds on 12B6 grounds in Montalvo and in National Federation for the Blind. The simple fact is that there are no facts that can change the fundamental truth about this complaint, which is that it is a direct attack on the defendant's ordinary flight operations into and out of Sea-Tac. There are no facts that can change the fundamental truth that the plaintiffs are seeking to override the FAA's expert judgment about the flight paths and the altitudes that the defendant should fly. And there are no facts that can change the fundamental truth that the plaintiffs are seeking to use state law to second-guess the EPA's determination about permissible emissions standards. The failure to clean up theory that plaintiffs have developed on appeal can't cover up, can't conceal the fact that this complaint is challenging emissions from ordinary flight operations. What the defendants have supposedly failed to clean up is the ordinary byproduct of flights into and out of Sea-Tac along federally prescribed flight paths at federally prescribed altitudes. For all of these reasons, this complaint is preempted multiple times over. Thank you. We thank all of you for your arguments. This is one of those cases that has a lot of lawyers working on it, and I'm sure there's some younger lawyers who were working on it too. So we thank them for their work. This case is submitted. We'll stand in recess until tomorrow morning. Thank you.
judges: McKEOWN, PAEZ, BRESS